NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

       POONAM KESWANI                    Chapter 7
       a/k/a "PARIS KESWANI"
       a/k/a "PARIS POONAM KESWANI",
                                     Case No. 20-10315-JLG

Debtor.


-----------------------------------------------------------------x

TREASURES LONDON LIMITED and
HARJIT SINGH ATHWAL,

             Plaintiffs,               Adv. P. No. 20-01084-JLG

   v.

POONAM KESWANI
a/k/a "PARIS KESWANI"
a/k/a "PARIS POONAM KESWANI,"

             Defendant.

-----------------------------------------------------------------x


## MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR JUDGMENT BY DEFAULT.


A P P E A R A N C E S :

KRAVIS & ASSOCIATES, PLLC
*Attorneys for Plaintiffs Treasures London Limited*
*and Harjit Singh Athwal*
31275 Northwestern Hwy., Ste. 145
Farmington Hills, MI 48334
By:    Andrew R. Kravis, Esq.

**JAMES L. GARRITY, JR.**
**United States Bankruptcy Judge:**

Introduction[1]

Harjit Singh Athwal ("Athwal") and Treasures London Limited ("TLL"), Athwal's

wholly owned company (collectively, the "Plaintiffs"), purport to be creditors of Poonam

Keswani a/k/a Paris Keswani a/k/a Paris Poonam Keswani (the "Debtor"). In May 2019, they

sued the Debtor and Treasures of Prince LLC ("TOP"), an entity that the Debtor controls, in the

State Court Action seeking $2,000,000 in damages on account of the Debtor's alleged fraud and

breach of her Personal Guaranty of TOP's debts. The commencement of the Debtor's voluntary

case under chapter 7 of the Bankruptcy Code automatically stayed prosecution of that action

against the Debtor. In this adversary proceeding, the Plaintiffs seek a determination that "the

monetary portion of [their] fraud and related claims against the [Debtor] are non-dischargeable"

under sections 523(a)(2)(A), (a)(2)(B), (a)(4), (a)(6), and 727(a)(3) of the Bankruptcy Code.

They also request that the Court grant them stay relief to prosecute the State Court Action. The

*pro se* Debtor did not respond to the Amended Complaint. The Clerk entered a Clerk's Default

against the Debtor and served a Certificate of Default on the Debtor.

The matter before the Court is Plaintiffs' motion for entry of a default judgment (the

"Motion")[2] against the Debtor in this action pursuant to Federal Rule of Civil Procedure 55(b)

("Rule 55(b)").[3] The Debtor did not respond to the Motion, and did not appear at the hearings on

the Motion.

For the reasons set forth herein, the Court denies the Motion.

---

[1]       Capitalized terms used but not defined in the Introduction are defined below.

[2]       *See* Plaintiffs' Motion For Judgment By Default Against Poonam Keswani a/k/a Paris Keswani a/k/a Paris
Poonam Keswani. [AP ECF No. 22]. Citations to "AP ECF No. _" refer to documents filed of record in this adversary
proceeding (Adv. Pro. 20-01084). Citations to "ECF No. _" refer to documents filed in the main case (No. 20-10315).

[3]       Rule 55(b) is made applicable herein by Rule 7055 of the Federal Rules of Bankruptcy Procedure.

Jurisdiction

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

Background

a.  Procedural History

On January 31, 2020 (the "Petition Date"), the Debtor, then represented by counsel, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this Court (the "Petition").[4]  On February 3, 2020, Deborah J. Piazza was appointed chapter 7 trustee for the Debtor's estate and qualified for and accepted that appointment.  On February 14, 2020, the Debtor filed her schedules of assets and liabilities and Statement of Financial Affairs (collectively, the "Schedules"); she filed amended and further amended Schedules A/B and C on March 2, 2020, April 17, 2020 and May 10, 2020 respectively.[5]  The Debtor listed each of the claims of the Plaintiffs in her Schedules as disputed, nonpriority unsecured claims arising out of a "Personal guarantee for Treasures of Prince."[6] On June 9, 2020, the Plaintiffs each filed a claim in the amount of $2,000,000 against the Debtor.[7]

On May 7, 2020, the Plaintiffs commenced this adversary proceeding by filing a complaint asserting claims for relief against the Debtor under sections 523 and 727 of the

---

[4]        *See* Debtor's Voluntary Chapter 7 Petition. [ECF No. 1].

[5]        *See* Debtor's Schedules. [ECF Nos. 7, 8, 21, 32].

[6]        *See* Official Form 106E/F, Part 2. [ECF No. 7].

[7]        *See* Claims Register, Claim Nos. 6, 7.

Bankruptcy Code.[8] On May 8, 2020, the Clerk of the Court (the "Clerk") issued a Summons

which was served upon the Debtor.[9] On June 12, 2020, the Plaintiffs filed an amended complaint

(the "Amended Complaint"), also asserting claims for relief under sections 523 and 727 of the

Bankruptcy Code, and on June 23, 2020, they served the Debtor with the Amended Complaint.[10]

On July 7, 2020, after Debtor failed to answer or otherwise respond to the Amended

Complaint, and upon the Plaintiffs' request, the Clerk entered a Default against the Debtor (the

"Clerk's Default").[11] Thereafter, the Clerk served the Certificate of Default on the Debtor.[12] On

January 11, 2021, Plaintiffs filed the Motion seeking entry of a default judgment against the

Debtor pursuant to Rule 55(b)(2). On April 1, 2021, the Court held a hearing on the Motion,

which the Debtor did not attend. At the hearing, the Court requested supplemental briefing from

the Plaintiffs and adjourned the hearing to May 4, 2021.[13]  On or about April 16, 2021, the

---

[8]       *See* Complaint To Determine Dischargeability Of Debt. [AP ECF No. 1].

[9]       *See* Summons And Notice Of Pretrial Conference In An Adversary Proceeding. [AP ECF No. 2]. On June 8, 2020, the Debtor, through her then-counsel, Karamvir Dahiya, Esq., filed an application seeking an order extending the Debtor's time to respond to the complaint to June 25, 2020. *See* Notice Of Adjournment. [AP ECF No. 3]. On June 24, 2020, Mr. Dahiya, upon the instruction of the Debtor, moved to withdraw as counsel to the Debtor. *See* Consent Motion to Withdraw as Attorney. [AP ECF No. 7]. On October 13, 2020, the Debtor, through Mr. Dahiya, withdrew the request to extend her time to respond to the complaint. *See* Notice of Withdrawal of Motion Without Prejudice. [AP ECF No. 16]. On October 19, 2020, the Court entered an order granting Mr. Dahiya's motion to withdraw as counsel. *See* Order Granting Attorney's Motion To Withdraw As Counsel Of Record For The Defendant Poonam Keswani. [AP ECF No. 17].

[10]      *See* Amended Complaint and Affidavit of Service. [AP ECF Nos. 4, 6]. The Plaintiffs appended to the Amended Complaint the following: (i) the Continuing Guarantee executed by Debtor in favor of TLL on October 24, 2017. *See* Am. Compl. Ex. A [AP ECF No. 4-1]; (ii) account statements for Chase acct. no. XXX5110 produced to the Plaintiffs by the Debtor in the State Court Action. *See id*. Ex. B [AP ECF No. 4-2]; (iii) account statements for Chase acct. no. XXX5110 and related affidavit produced to Plaintiffs by JPMorgan Chase Bank in the State Court Action. *See id*. Ex. C [AP ECF No. 4-3]; and (iv) allegedly falsified financial statement provided by the Debtor. *See id.* Ex. D [AP ECF No. 4-4].

[11]      *See* Request for Clerk's Entry of Default against Defendant, Poonam Keswani. [AP ECF No. 10]. *See also* Clerk's Entry of Default against Poonam Keswani. [AP ECF No. 11].

[12]      *See* Certificate of Mailing. [AP ECF No. 12].

[13]      *See* Minutes of Proceedings, April 1, 2021. [AP ECF No. 25]. In requesting additional briefing, the Court provided the Debtor with the opportunity to respond to the Plaintiffs' submission. *Id.*

Plaintiffs timely filed their supplemental brief in support of the Motion (the "Supplemental Brief").[14] The Debtor did not respond to the Supplemental Brief and did not appear at the May 4, 2021 adjourned hearing on the Motion.

     b. <u>Factual Background</u>[15]

     Prior to 2006, Athwal did not know the Debtor. He contends that sometime in 2006, he encountered her on an online forum and during the period of 2006 through 2010, through online correspondence and telephone calls, he and the Debtor became good friends.[16] The Debtor represented that she made jewelry that she would then sell and retail on the open market both online and via her retail outlets.[17] The Debtor also held herself out to the public and to Athwal as a certified gemologist, who graduated from the Gemology Institute of America.[18] The parties reconnected in 2013. In April 2014 Athwal visited the Debtor in New York City.[19] Thereafter, Athwal and the Debtor visited each other on numerous occasions. Over the course of those visits, they developed a close personal relationship.[20] Based on his visits to the Debtor at her residence and business premises, and his receipt of WhatsApp messages from the Debtor purporting to show lucrative jewelry sales, Athwal believed that the Debtor was a successful business person.[21]

---

[14]     *See* Supplemental Brief In Support Of Plaintiffs' Motion For Entry of Default Judgment. [AP ECF No. 27].

[15]     On a motion for a default judgment, the plaintiff's uncontested, well-pleaded facts are deemed admitted. *Caytas v. Maruszak*, No. 06 CIV. 985 LTS DCF, 2009 WL 249377, at *1 (S.D.N.Y. Jan. 30, 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d. Cir. 1981). Accordingly, the Court looks to the allegations in the Amended Complaint in providing the factual underpinnings of this action.

[16]     Am. Compl. ¶ 8.

[17]     *Id.* ¶ 14.

[18]     *Id.* ¶¶ 15-16.

[19]     *Id.* ¶¶ 19, 22.

[20]     *Id.* ¶¶ 30, 32-33.

[21]     *Id.* ¶¶ 34, 36.

In September 2016, the Debtor informed Athwal that she wished to branch out beyond her online and retail jewelry businesses by setting up an international rough diamond business and asked for his advice concerning the opening of a Spanish bank account for one of her business partners.[22] In January 2017, the Debtor presented Athwal with a business opportunity, namely de-sourcing, processing and subsequent sale of rough diamonds throughout the U.S. and London to the Debtor's clients.[23] The Debtor proposed that she would conduct this business through TOP and Athwal would do so through TLL.[24] The parties agreed that Athwal would provide funding for the enterprise pursuant to a loan from TLL to TOP, and in return, TOP would repay the initial principal to TLL and would distribute a return on the loan to TLL by way of profits accumulated by TOP on its transactions.[25] After Athwal expressed concerns that the loan was unsecured, the Debtor said she would have given him diamonds as collateral and would deliver to him a 10-carat diamond ring "worth a lot more than $400,000."[26]

On January 31, 2017, the Debtor requested Athwal to make an initial disbursement of $400,000.00, which Debtor claimed was required promptly to purchase a parcel of diamonds. On February 2, 2017, Athwal transferred £317,830.62 ($399,980) ("Original Loan") from his personal account to TOP.[27] On March 28, 2017, TLL advanced the sum of £60,000.00 ($74,334) to TOP, representing TLL's contribution towards the purchase of another parcel of rough

---

[22]     *Id.* ¶¶ 38-39.

[23]     *Id.* ¶ 69.

[24]     *Id.* ¶ 70.

[25]     *Id.* ¶ 71.

[26]     *Id.* ¶ 73.

[27]     *Id.* ¶¶ 75-76.

diamonds.[28] On May 18, 2017, TLL advanced the sum of £47,270.30 ($59,964) to TOP,

representing TLL's contribution towards an alleged acquisition of 1,000 carats of diamonds.[29]

June 12, 2017, TLL advanced the sum of £300,000 ($377,400) to TOP, as a contribution towards

an alleged purchase of 793 carats of diamonds.[30] The sum total of the Original Loan and

subsequent loan advances (collectively the "Loan") is approximately $911,678.00.

On October 3, 2017, in an email, the Debtor represented to Athwal that she and her

accountant were in the process of submitting a repayment of the Loan in the amount of

$1,000,000.00.[31] When Athwal did not receive the promised payment, he became increasingly

concerned about the collectability of the Loan.[32] In response to Athwal's concerns, on October

24, 2017, the Debtor executed a Continuing Guarantee, whereby she expressly agreed to

personally guaranty the debts owed by TOP to TLL (the "Personal Guaranty").[33]

By letter addressed to TLL dated November 10, 2017, TOP confirmed the receipt of

$922,000 (£732,000 GBP) from TLL between February 2017 and June 2017 "as part of a joint

venture and investments to buy merchandise."[34] In that letter, TOP acknowledged it's debt to

TLL in the sum of $2,000,000 as of November 10, 2017.[35] Further, the letter states that "TOP has

agreed to reimburse a minimum sum of $2,000,000 (without any offset or deductions) to TLL

---

[28]    *Id.* ¶ 79.

[29]    *Id.* ¶ 80.

[30]    *Id.* ¶ 81.

[31]    *Id.* ¶ 82.

[32]    *Id.* ¶ 84.

[33]    *Id.* ¶ 85; *see also id.* Ex. A.

[34]    *Id.* Ex. A, at 13.

[35]    *Id.*

which shall comprise of both the original capital together with profit share as party of the joint venture."[36] Plaintiffs assert that despite numerous subsequent demands for repayment, the Debtor has failed to produce any of the funds that she has acknowledged are due and owing to them.[37]

On May 6, 2019, Athwal and TLL filed suit against the Debtor in New York State Supreme Court, New York County (the "State Court Action").[38] In response to pre-petition discovery demands in the State Court Action, the Debtor produced to Plaintiffs what she represented to be JPMorgan Chase Bank ("Chase") account statements demonstrating application of the funds loaned by TLL to TOP to legitimate business expenses.[39] Thereafter, in response to Plaintiffs' subpoena, Chase produced account statements for the same accounts and time periods that were markedly different from those produced by the Debtor, and belied the Debtor's assertion that she used the Loan proceeds for legitimate business purposes.[40] Plaintiffs contend such acts demonstrate a willful effort to deceive and defraud as to the existence, use, and location of Plaintiffs' loan funds.[41] Plaintiffs further allege the Debtor "provided Plaintiffs with a falsified financial statement that purports to demonstrate that [the Debtor's] inability to repay the Loan was due to legitimate losses incurred by Treasures of Prince."[42]

---

[36]    *Id.*

[37]    *Id.* ¶ 88.

[38]    *Id.* ¶ 97. *See also Treasures London Limited, et al v. Poonam Keswani, et al.* (Index No. 652666/2019) (N.Y. Sup. Ct., N.Y. Cty., May 6, 2019).

[39]    *Id.* ¶ 98; *see also id.* Ex. B.

[40]    *Id.* ¶ 99; *see also id.* Ex. C.

[41]    *Id.* ¶ 99.

[42]    *Id.* ¶ 129; *see also id.* Ex. D.

<u>Legal Standard</u>

Rule 55(b) "provides a 'two-step process' for the entry of a judgment against a party that fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). *See* Fed. R. Civ. P. 55(b). Default judgments are not favored but are sometimes necessary. *See Sun Bank of Ocala v. Pelican Homestead and Savings Association*, 874 F.2d 272, 276 (5th Cir. 1989) (default judgment is a "drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."). *See also McKenzie v. Wakulla Cty.*, 89 F.R.D. 444, 445 (N.D. Fla. 1981) (default judgments, although not favored, are "necessary to ensure the functioning of the judicial process."). Where, as here, the defaulting party is acting *pro se*, the Court "must be especially hesitant to enter a default judgment." *Interscope Records v. Benavides*, 241 F.R.D. 458, 461 (W.D. Tex. 2006). *See also Goodrich v. WFS Financial, Inc*., No. 06–CV–1435, 2008 WL 1805819, at *1 (N.D.N.Y. Apr. 18, 2008) ("a *pro se* litigant is held to a lesser standard in terms of satisfying procedural rules, and hence, a default judgment should be used sparingly against these parties."); *Ward v. Ramkalawan*, No. CV 11-4295 JS ARL, 2013 WL 1149108, at *2 (E.D.N.Y. Feb. 11, 2013), report and recommendation adopted, No. 11-CV-4295 JS ARL, 2013 WL 1149068 (E.D.N.Y. Mar. 19, 2013) (same).

Rule 55 "tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006) (quoting *Vt. Teddy Bear Co. v. 1–800 Beargram Co.,* 373 F.3d 241, 246 (2d Cir. 2004)). However, "a defendant's default does not in itself warrant the court in entering default judgment. There must be a sufficient basis in the pleadings for the judgment entered."

8

*Nishimatsu Constr. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Accordingly, "[a] request for default judgment may be denied when the complaint is

insufficient." *Discovery Bank v. Fuentes (In re Fuentes),* 474 B.R. 497, 500 (Bankr. S.D. Tex.

2012).

<u>Discussion</u>

a.   <u>Claims for Relief Under 11 U.S.C. § 523</u>

In the Amended Complaint, the Plaintiffs assert four causes of action seeking relief

against the Debtor under section 523(a) of the Bankruptcy Code. Specifically, they assert claims

under sections 523(a)(2)(A) (Am. Compl. ¶¶ 91-105 (Count I)), (a)(2)(B) (*id.* ¶¶ 107-113 (Count

II)); (a)(4) (*id.* ¶¶ 115-121 (Count III)), and (a)(6) (*id.* ¶¶ 123-126 (Count IV)). In each of these

claims, the Plaintiffs request the Court (i) determine that the monetary portions of their fraud and

related claims against the Debtor are non dischargeable pursuant to section 523; and (ii) to grant

them stay relief to permit them to continue to prosecute the State Court Action.[43]

Section 523 of the Bankruptcy Code excepts certain debts from discharge. *See* 11 U.S.C.

§ 523. "The party seeking an exception to discharge bears the burden of proof by a

preponderance of the evidence." *Benzaquen v. Rabinowitz (In re Rabinowitz)*, 508 B.R. 874, 879

(Bankr. S.D.N.Y. 2014) (citing *Grogan v. Garner*, 498 U.S. 279, 285 (1991)). Exceptions to

---

[43]      For example, in support of Count I of the Amended Complaint, the Plaintiffs request that the Court:

   A.   Determine that the monetary portion of the Plaintiff's fraud and related claims against the
        Debtor/Defendant are non dischargeable pursuant to 11 U.S.C. 523(a)(2)(B);

   B.   Grant the Plaintiffs relief from the automatic stay, so as to permit the Plaintiffs to continue
        pursuing the New York State Supreme Court matter as described herein; and

   C. For such other and further relief as this Court deems just and proper under the circumstances.

Am. Compl. ¶ 105.

discharge are construed narrowly. *Id.*; *see also Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 167 (2d Cir. 1999). This effectuates the Bankruptcy Code's objective to provide "the debtor 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' " *Fleet Credit Card Servs. v. Macias (In re Macias)*, 324 B.R. 181, 187 (Bankr. E.D.N.Y. 2004) (quoting *Cazenovia Coll. v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86 (2d Cir. 2000)).

> As relevant, section 523 states:
>
> (a) A discharge under section 727…of this title does not discharge an individual debtor from any debt—
> *        *        *        *
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>>
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>>>
>>> (B) use of a statement in writing— (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive; …
>> *        *        *        *
>> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
>> *        *        *        *
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. §§ 523(a)(2), (4), (6). As used in this section the term "debt" means liability on a claim. *See* 11 U.S.C. § 101(12). In turn, the term "claim" means "a right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 101(5)(A). A "right to payment" is nothing more nor less than an "enforceable obligation." *Cohen v. de le Cruz*, 523

U.S. 213, 218 (1998) (citing *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552,

559 (1990)).

In that light, in assessing the merits of a claim for relief under section 523, a court must

consider (i) whether the creditor holds an enforceable obligation under non-bankruptcy law; and

(ii) whether the debt is non-dischargeable under section 523(a). "In the absence of an enforceable

obligation, there is no "debt" that can be non-dischargeable." *In re Roland*, 294 B.R. 244, 249

(Bankr. S.D.N.Y. 2003) (citations omitted). *See also In re McKendry*, 40 F.3d 331, 337 (10th

Cir. 1994) (there are "two distinct issues in a nondischargeability proceeding. The first, the

establishment of the debt itself…"); *In re Bundick*, 303 B.R. 90, 103 (Bankr. E.D. Va. 2003)

("An action to determine the dischargeability of a debt under § 523(a) has two components....

The first step requires that the creditor establish that a debt is in fact owed by the debtor.")

(citations omitted); *In re Hazelton*, 304 B.R. 145, 150 (Bankr. M.D. Pa. 2003) ("Application of a

subsection 523(a) discharge exception hinges on a finding, under applicable law, that the

obligations at issue are personal debts of Debtor."); *In re Desiderio*, 213 B.R. 99, 106 (Bankr.

E.D. Pa. 1997) ("[T]he presence of a debt in some amount must be proven to support a claim of

nondischargeability."). If the Plaintiffs do not hold a valid debt against the Debtor, then they

cannot prevail in their section 523(a) causes of action.

The Plaintiffs allege that in October 2017, the Debtor "executed a Personal Guaranty,

whereby the [Debtor] expressly agreed to personally guaranty the debts owed to TLL."[44] They

say that as of November 10, 2017, "the [Debtor] acknowledged that the total debt owed to TLL

as of said date was $2,000,000.00 and expressly affirmed her promise to repay the sum of

---

[44]    Am. Compl. ¶ 85.

$2,000,000.00 to TLL/Athwal in relation to same,"[45] but that "[d]espite numerous subsequent

demands for repayment, the [Debtor] has failed to repay any of the funds that she has

acknowledged are due and owing to TLL/Athwal, to date."[46] They contend that because the

guaranty gives rise to a claim under section 101(5)(A) of the Bankruptcy Code and that Debtor's

liability under the Personal Guaranty is clear "as a matter of law," they have made a prima facie

showing that the their claim arising from the guaranty is valid and enforceable, and, as such, the

Court should enter a default judgement against the Debtor determining that her "debt is non-

dischargeable" under section 523 of the Bankruptcy Code. *See* Supplemental Brief at 1-2.

A breach of a personal guaranty gives rise to a claim under the Bankruptcy Code. *See In

re Motley*, 268 B.R. 237, 240 (Bankr. C.D. Cal. 2001) ("A personal guarantee is within the scope

of the statutory definition of a claim.") (citing *Travelers Ins. Co. v. Cambridge Meridian Group

(In re Erin Food Servs.)*, 980 F.2d 792, 796 (1st Cir. 1992)). However, although the Plaintiffs

allege in the Amended Complaint that they hold claims against the Debtor under the guaranty,

they do not allege that they hold a valid debt against the Debtor. Nor can they because at issue in

the State Court Action – and not in the Amended Complaint – is the enforcement of the Personal

Guaranty against the Debtor. There must be a determination that the Debtor is liable to Plaintiffs

on their claims against the Debtor before a debt can arise against the Debtor. Accordingly, no

debt is presently owed by the Debtor to Plaintiffs on account of her Personal Guaranty. *In re

Moy*, No. AP 12-A-96129, 2015 WL 1585525, at *7 n. 9 (Bankr. N.D. Ill. Apr. 3, 2015) (failing

to show the debtor has liability of a claim means there is no debt incurred by the debtor); *In re

Ekuban*, No. 03-35869SAF-7, 2004 WL 1088340, at *5 (Bankr. N.D. Tex. Apr. 16, 2004), *aff'd*,

---

[45]    *Id.* ¶ 86.

[46]    *Id.* ¶ 88.

177 F. App'x 407 (5th Cir. 2006) (finding that an unenforceable guaranty does not create a debt).

"In the absence of an enforceable obligation, there is no 'debt' that can be non-dischargeable." *In re Roland*, 294 B.R. at 249. *See also In re Nichols,* 509 B.R. 722, 725 (Bankr. N.D. Okla. 2014) ("In order for § 523(a)(2)(A) to come into play, there must be a debt that is subject to discharge. If there is no debt, there is no issue of dischargeability."); *In re Deemer,* 360 B.R. 278 (Bankr. N.D. Iowa 2007) (claim for relief under section 523 is premature where no debt yet exists); *Matter of Conway*, 96 B.R. 311, 313 (D. Colo. 1989) (affirming the bankruptcy court's dismissal of claims for relief under section 523(a) where no debt existed.) In the Amended Complaint, the Plaintiffs do not seek a determination that the Debtor is liable on the Personal Guaranty. Rather, they ask the Court to grant them stay relief to permit them to continue pursuing such a determination in the State Court Action.

The Plaintiffs have failed to demonstrate that they hold an enforceable debt against the Debtor. Accordingly, the Court denies the Motion for entry of a default judgment under Counts I through IV of the Amended Complaint.

b.  Claim for Relief Under 11 U.S.C. § 727(a)(3)

In Count V of the Amended Complaint, the Plaintiffs seek relief against the Debtor under section 727(a)(3) of the Bankruptcy Code. Am. Compl. ¶¶ 127-132. As support for that claim they allege that "[i]n furtherance of her fraudulent scheme … [the Debtor] falsified multiple Chase Bank Statements intend[ing] to deceive Plaintiffs into believing the Loan proceeds were utilized for legitimate business purposes," and "provided Plaintiffs with falsified financial statements that purport to demonstrate [her] inability to repay the Loan was due to legitimate losses." *Id.* ¶¶ 128-129.

13

Under section 727(a) of the Bankruptcy Code, a court "shall grant the debtor a discharge" unless one of the twelve exceptions contained in section 727(a) applies. *See* 11 U.S.C. § 727(a). Generally, a denial of discharge pursuant to section 727 is characterized as an extreme remedy that "must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *In re Cacioli*, 463 F.3d 229, 234 (2d Cir. 2006) (citing *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996) (internal quotations omitted)). The burden of persuasion rests with the objecting party to show by a preponderance of the evidence that the debtor is not entitled to discharge. *In re Zembko*, 367 B.R. 253, 254 (Bankr. D. Conn. 2007); *In re Jacobowitz*, 296 B.R. 666 (Bankr. S.D.N.Y. 2003); *In re Wolfson*, 152 B.R. 830 (S.D.N.Y. 1993).

Pursuant to section 727(c), only the "trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of [section 727]." 11 U.S.C. § 727(c). The Bankruptcy Code defines the term "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). As such, to qualify as a "creditor" with standing to oppose the Debtor's discharge under section 727, Plaintiffs need only hold a "claim" against the Debtor that arose before the Petition Date. *In re Holstein*, 299 B.R. 211, 224 (Bankr. N.D. Ill. 2003), *aff'd sub nom. Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein*, No. 03 C 8023, 2004 WL 2075442 (N.D. Ill. Aug. 31, 2004). "The word 'claim' is interpreted broadly under the Bankruptcy Code." *In re Okura & Co. (Am.), Inc.*, 249 B.R. 596, 602 (Bankr. S.D.N.Y. 2000) (citations omitted). "Claim" encompasses any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). In defining "claim" so broadly, it was Congress' intent "that

14

'all legal obligations of the debtor, no matter how remote or contingent, [would] be able to be dealt with in the bankruptcy case....' " *Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 128 (2d Cir. 2000) (quoting *United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997, 1003 (2d Cir. 1991)).

Plaintiffs' assertion of a right to payment under the Personal Guaranty constitutes a claim. *In re Motley*, 268 B.R. at 240. Because Plaintiffs hold "claims" against the Debtor, they are "creditors" with standing to seek the denial of the Debtor's discharge under section 727(a)(3). Under that section, the court shall grant the debtor a discharge, unless-

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). This subsection "make[s] the privilege of a discharge dependent on a true representation of the debtor's financial affairs." *Colonial Bank v. Wynn (In re Wynn)*, 261 B.R. 286, 299 (Bankr. M.D. Ala. 2001). It ensures that creditors and trustees receive sufficient and accurate information to determine the debtor's financial history, financial condition, and the details of financial transactions. *Id*. The debtor shoulders the affirmative duty to maintain and retain comprehensible records. *Sackett v. Shahid (In re Shahid)*, 334 B.R. 698, 706 (Bankr. N.D. Fla. 2005). Courts and creditors should not be burdened with reconstructing and speculating as to the financial history or condition of a debtor. *Turner v. Tran (In re Tran)*, 297 B.R. 817, 835 (Bankr. N.D. Fla. 2003).

To obtain relief under section 727(a)(3), a creditor must demonstrate:

> a. an act of destruction, mutilation, falsification or concealment of any recorded information including books, documents, records and papers by the debtor or someone acting for the debtor;

b. and that by failing to keep such books or records, or by destroying or concealing such records, it is impossible to ascertain the financial condition and material business transactions of the debtor.

*In re Gardner*, 384 B.R. 654, 665 (Bankr. S.D.N.Y. 2008). *See also In re Hirsch,* No. 1-02-17966-DEM, 2009 WL 3297278, at *7 (Bankr. E.D.N.Y. Oct. 13, 2009) ("The essential elements of this cause of action are 1) the debtor has concealed, falsified or failed to keep records, 2) from which the debtor's financial condition or transactions might be ascertained, and 3) the conduct was not justified under all of the circumstances of the case.") (citing 11 U.S.C. § 727(a)(3); *In re Yadidi*, 274 B.R. 843, 852 (B.A.P. 9th Cir. 2002); *In re Miller*, 97 B.R. 760, 763-64 (Bankr. W.D.N.Y. 1989)).

The Plaintiffs allege that the Debtor produced false documentation concerning the financial condition of Treasures International, an entity that the Debtor controls, in response to discovery requests in the State Court Action. *See* Am. Complt. ¶¶ 98, 99, Exs. B, C. The Plaintiffs also assert that the Debtor "provided [them] with falsified financial statements," which they allege the Debtor used to misrepresent her inability to repay the Loan due to purported losses incurred by TOP. *Id.* ¶ 129; *see also id.* Ex. D; *id.* ¶ 87 ("In response to Athwal's numerous subsequent demands for repayment of the debt, the [Debtor] has fabricated elaborate tales of woe and excuses for her delays, all of which were patently false and intended to deceive Athwal.").

Section 727(a)(3) "does not punish a debtor for lack of cooperation in a *pre-bankruptcy* setting." *In re Dykes*, No. 4:05-BK-07711JMM, 2007 WL 1109217, at *1 (Bankr. D. Ariz. Apr. 11, 2007) (emphasis in original). Rather, "[t]he purpose of the statute is to ensure a debtor's cooperation in the bankruptcy case itself." *Id.* "Complete disclosure in the bankruptcy case, to the trustee and the scheduled creditors, is a quid pro quo for discharge of debts." 4 Norton Bankr.

16

Law & Practice 3d § 86:9 (2021). The Plaintiffs complain about actions taken by the Debtor pre-petition, not during the chapter 7 case. Accordingly, as a matter of law, the Plaintiffs cannot state a claim for denying Debtor's bankruptcy discharge under section 727(a)(3) of the Bankruptcy Code. *See In re Dykes,* 2007 WL 1109217, at *2 (citations omitted).

Accordingly, the Court denies the Plaintiffs' request for default judgment on their claims under section 727(a)(3).

In their Supplemental Brief, the Plaintiffs assert that Debtor's alleged "dilatory acts" occurred pre-petition but contend that they occurred less than one year prior to the Petition Date. Supplemental Brief at 4. They assert that "if [the Debtor] concealed and/or falsified any recorded information form [sic] which the [Debtor's] financial condition or business transactions might be ascertained within one year prior to the filing of the Petition, whether in the instant matter or in connection with another case, the Court should deny [the Debtor] a discharge pursuant to 11 U.S.C. § 727(a)(3)." *Id.* at 3.  As support for that contention, they rely on section 727(a)(7) of the Bankruptcy Code. *Id.* That section states the court shall grant the debtor a discharge, unless –

> the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of [section 727(a)], on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider.

11 U.S.C. § 727(a)(7).

In the Amended Complaint, the Plaintiffs did not assert a claim for relief against the Debtor under section 727(a)(7). As noted, under Rule 55(a), the uncontested, well-pleaded facts in a complaint are presumed to be true and are deemed admitted by the defaulting defendant. *See Caytas v. Maruszak,* 2009 WL 249377, at *1 (S.D.N.Y. Jan. 30, 2009) (citations omitted). "This presumption is predicated upon the complaint giving the opposing party notice as to what specific relief its adversary seeks and what provision of which law is being invoked." *Khurana v.*

17

*JMP USA, Inc*., No. 14-CV-4448 (SIL), 2017 WL 1251102, at *5 (E.D.N.Y. Apr. 5, 2017)

(citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co*., 373 F.3d at 245–46). To that end, the Federal

Rules are clear that "[a] default judgment must not differ in kind from or exceed in amount what

is demanded in the pleadings." Fed. R. Civ. P. 54(c). Application of that rule bars the Plaintiffs

from obtaining a default judgment against the Debtor under section 727(a)(7), because they did

not include a claim for such relief in the Amended Complaint. *See Khurana v. JMP USA, Inc*.,

2017 WL 1251102, at *5 (noting that by application of Rule 54(c), a party "may not seek

damages tied to causes of action not pled in the unanswered complaint by raising them for the

first time as part of a motion for default judgement."). *See also Silge v. Merz*, 510 F.3d 157, 160

(2d Cir. 2007) (declining to award pre-judgment interest where plaintiff failed to include a claim

for such damages in the demand clause, and noting that "[b]y operation of Rule 54(c), his failure

to do so, intentional or not, ran the risk that his damages would be limited in the event of

default."); *In re Lary*, 331 B.R. 493, 496–97 (Bankr. M.D. Ga. 2005) ("A judgment in a default

case that awards relief that either is more than or different in kind from that requested originally

is null and void and defendant may attack it collaterally in another proceeding.") (quoting

Federal Practice and Procedure § 2663, pp 167–69) (quotations omitted); *Cummings v. Garcia*,

No. 1:07-CV-1886, 2010 WL 11549911, at *1 n.1 (M.D. Pa. June 24, 2010) (Pursuant to Rule

54, "a plaintiff will not be awarded relief for a cause of action which she failed to plead.").

For reasons of judicial economy, the Court will consider whether the Plaintiffs could

further amend the Amended Complaint to assert a claim against the Debtor under section

727(a)(7). On June 12, 2020, the Plaintiffs filed the Amended Complaint and served it on the

Debtor. Having amended the complaint once, they could further amend it to assert a claim for

relief under section 727(a)(7) "only with the opposing party's written consent or the court's

leave." Fed. R. Civ. P. 15(a)(2).[47] The rule directs the court to "freely give leave [to replead]

when justice so requires." *Id.* Nonetheless, it is settled that "it is proper to deny leave to replead

where there is no merit in the proposed amendments or amendment would be futile." *Hunt v.*

*Alliance North American Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998) (citations

omitted). *See also Pristine Jewelers NY, Inc. v. Broner,* 492 F. Supp. 3d 130, 131-32 (S.D.N.Y.

2020) ("Even if good cause is established, however, a court may deny a motion to amend if the

proposed amendment would be futile, unduly prejudicial, or otherwise improper." (internal

quotation marks omitted) (citations omitted).

       To obtain relief under section 727(a)(7), the Plaintiffs must demonstrate that: (i) the

Debtor committed an act specified in section 727(a) (2)-(6); (ii) such act occurred on or within

one year before the Petition Date or during the Debtor's bankruptcy case; and (iii) the act was

committed in connection with another bankruptcy case concerning an insider. *See* 11 U.S.C. §

727(a)(7). *See also In re Breedlove*, 545 B.R. 359, 380 (Bankr. M.D. Ga. 2016) (In order to

successfully deny a debtor a discharge under section 727(a)(7), the moving party must "prove the

following three elements: (1) the debtor committed an objectionable act under § 727(a)(2)

through (6); (2) the objectionable act occurred on or within one year before the Petition Date or

during the debtor's bankruptcy case; and (3) the act was committed in connection with another

bankruptcy case concerning an insider."). *Accord In Matter of Poppe*, No. A16-4019, 2017 WL

27924, at *3 (Bankr. D. Neb. Jan. 3, 2017).

       The Plaintiffs allege that in violation of section 727(a)(3), the Debtor falsified financial

statements and business transactions in an effort to conceal the true nature of the transactions at

---

[47]    Rule 15 is made applicable herein by Bankruptcy Rule 7015. For purposes of this discussion, the Court
assumes that the Debtor would not consent to the Plaintiffs' request for leave to further amend the Amended
Complaint.

issue and the financial condition of both herself and TOP, and that she did so within one year

before the Petition Date. Am. Compl. ¶¶ 97-101, 128-29. However, "[section 727(a)(7)] only

applies where a debtor commits the specified acts in connection with another case under Title 11

concerning an insider." *Fokkena v. Huynh (In re Huynh)*, 379 B.R. 865, 872 (Bankr. D. Minn.

2008). *See also Lohff v. Paxton (In re Paxton)*, No. 04–03517, 2006 WL 1582366, at \*4 (Bankr.

N.D. Iowa May 30, 2006) ("Section 727(a)(7) concerns activity by a debtor in connection with

another bankruptcy case concerning an insider."). The Plaintiffs do not and cannot make that

allegation because the Debtor committed the alleged bad acts in the State Court Action – not in

the bankruptcy case of an insider. Thus, section 727(a)(7) has no application in this case. *See,

e.g., In Matter of Poppe*, 2017 WL 27924, at \*3 (rejecting plaintiff's reliance on section

727(a)(7), because it included a one-year look back period, in support of its section 727(a)(6)

claim, as there were no allegations that the debtors refused to obey an order in either their

bankruptcy case or the bankruptcy case of an insider); *In re Charles*, No. 18-10075, 2019 WL

1757125, at \*9 (Bankr. N.D.N.Y. Apr. 15, 2019), *aff'd sub nom. Nayyar v. Charles*, No. 1:19-

CV-00508 (BKS), 2020 WL 6484051 (N.D.N.Y. Nov. 4, 2020) (dismissing plaintiff's section

727(a)(7) cause of action as there were no allegations that any other related bankruptcy case

existed, and the court was not aware of any such case.); *In re Wong*, 291 B.R. 266, 282 (Bankr.

S.D.N.Y. 2003) (dismissing section 727(a)(7) claim because, among other things, the complaint

failed to allege property transfers in a bankruptcy case of an insider). *See also* Collier on

Bankruptcy ¶ 727.10 (16th 2021) ("Section 727(a)(7) extends the basis for denial of discharge to

the debtor's misconduct in a substantially contemporaneous related bankruptcy case.").

The Plaintiffs have not, and cannot, plead facts demonstrating that the Debtor committed

acts specified under section 727(a)(2)-(6) in the bankruptcy case of an insider. As such, even if

20

Plaintiffs were granted leave to replead the Amended Complaint to assert a claim under section

727(a)(7), such amendment to the pleadings would be futile because the claim would fail as a

matter of law. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (The problem with

[plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would

thus be futile. Such a futile request to replead should be denied.").  *See also Donovan v. Am.*

*Skandia Life Assur. Corp.*, 217 F.R.D. 325, 325 (S.D.N.Y. 2003), *aff'd*, 96 F. App'x 779, 781 (2d

Cir. 2004) ("Where a proposed amended complaint cannot itself survive a motion to dismiss,

leave to amend would be futile and may clearly be denied."). leave to amend the Amended

Complaint, to assert a claim against the debtor for relief under section 727(a)(7). Accordingly,

the Plaintiffs misplace their reliance on section 727(a)(7) as a predicate for denying the Debtor

her discharge in bankruptcy.

    c.  <u>Claims for Relief From The Automatic Stay</u>

       As noted, within each of the five causes of action asserted in the Amended Complaint,

Plaintiffs request that the Court grant them relief from the automatic stay to permit them to

continue to prosecute the State Court Action.

       Federal Rule of Bankruptcy Procedure 7001 enumerates nine categories of controversies

that may be brought as adversary proceedings. Fed. R. Bankr. P. 7001. None of them includes a

request for relief from the automatic stay. *Id.* It is improper to seek such relief in an adversary

proceeding. *See In re Lehman Bros. Holdings, Inc.,* No. 08-13555 JMP, 2011 WL 722582, at \*8

(Bankr. S.D.N.Y. Feb. 22, 2011) (relief from the automatic stay is improperly sought via

adversary proceeding).

       Section 362 of the Bankruptcy Code governs the automatic stay. Section 362(d) directs

that a party seeking stay relief must do so pursuant to "notice and a hearing." 11 U.S.C. § 362(d).

Under Bankruptcy Rule 4001(a)(1), "[a] motion for relief from an automatic stay provided by
the Code… shall be made in accordance with Rule 9014 and shall be served on… the creditors
included on the list filed pursuant to Rule 1007(d), and on such other entities as the court may
direct." Fed. R. Bankr. P. 4001(a)(1). *See also* Local Bankruptcy Rules, Rule 4001-1 ("A party
moving for relief from the automatic stay under section 362 of the Bankruptcy Code must obtain
a return date for the motion that is not more than third (3) days after the date on which the
motion will be filed.).

The Plaintiffs request stay relief as part of their claims for relief under sections 523 and
727 of the Bankruptcy Code. They have not filed a separate motion for stay relief or sought a
hearing on such relief in the Debtor's bankruptcy case. Further, the Debtor's creditors identified
pursuant to Bankruptcy Rule 1007(d) are not among those parties noticed in connection with the
Motion. Additionally, section 362(d) sets forth the grounds for stay relief, providing "that the
court 'shall' grant relief, for example, by terminating, annulling, modifying or conditioning the
stay 'for cause, including the lack of adequate protection of an interest in property.' " Collier on
Bankruptcy ¶ 362.07 (quoting 11 U.S.C. § 362(d)(1)). "The burden is on the moving party to
make an initial showing of "cause" for relief from the stay." *In re Mazzeo*, 167 F.3d 139, 142 (2d
Cir. 1999). Plaintiffs have failed to submit any argument establishing "cause" for the requested
relief from the stay in either the Amended Complaint or Motion. "[A]bsent a showing of cause,
the court should simply deny relief from the stay." *Id.* (citing *In re Boodrow*, 126 F.3d 43, 47 (2d
Cir. 1997), *cert. denied*, 522 U.S. 1117 (1998).

Accordingly, the Court denies Plaintiffs' request for a default judgment on their requests
for relief from the automatic stay.

<u>Conclusion</u>

Based on the foregoing, the Court denies the Motion.

IT IS SO ORDERED.

Dated: New York, New York
May 12, 2021

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge